The Honorable Court, all rise. The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. Good morning. Please be seated. Court is in session. Today's cases will be called as previously announced, and the times will be as allotted to counsel. The first case today is number 221215, Alfonso Estardo Mendez Esteban v. Merrick B. Garland. At this time, would Counsel for the Petitioner, Patrick Roth, please come to the podium and introduce himself on the record to begin. Good morning, Your Honors. May it please the Court, Patrick Roth with Roths and Gray for the Petitioner. Your Honor, may I reserve three minutes for rebuttal? Yes, you may. Thank you, Your Honor. In this case, the BIA committed legal error and should be reversed because the government did not meet its burden of establishing a fundamental change of circumstances in the country of Guatemala. The Board's order to the contrary was based on three determinations, all of which constitute legal error. First is the Board's over-reliance on generic country report evidence about alleged changes in Guatemalan politics. Second is the Board's reliance on the fact that the very government that Mr. Mendez was protesting had canceled the political party that Mr. Mendez was part of. The Board's reasoning here would be a roadmap for oppressive regimes to negate future asylum claims simply by persecuting their opponents, and it is fundamentally unfair and wrong. The third basis that the BIA relied on is the fact that Mr. Mendez's family members have not been harassed in his absence. But there is no evidence that those family members participated in politics, and the DeHaal case from this Court in 2019 explicitly ruled that this ground should not be given much, if any weight, at all. Now, turning first to the country report evidence— Could I circle back to your second point regarding the—I think you said canceled the party that Mr. Mendez belonged to. What evidence do you cite to rely on that? Yes, Judge. So, below, before the IJ and before the BIA, Mr. Mendez argued that what happened to the leader party that he belonged to was relevant to his claim, that the disposition of that party was relevant. That's in his brief to the BIA at Administrative Record 24. We do cite in our briefs to a more recent development, which we believe this Court can take judicial notice of and was properly exhausted in terms of the argument below. I will note, too, that in the cross-examination of Mr. Mendez, the government attorney with DHS asked him, did you know that the party had been canceled and used the term canceled? So, it's clear that the government knew below what had happened to the leader party, and that was properly in evidence. And should this Court have a question about whether the disposition of the leader party is properly in evidence in the administrative tribunal, we submit that the proper remedy would be to remand for development of the facts. What about there's mention in the BIA or the IJ's opinion there was a peaceful transition? What will you have to say about that? Doesn't that sort of moot his claim? So, Judge, no, we don't believe it moots the claim. The BIA and the IJ both relied on two pieces of evidence to support the conclusion that there had been a peaceful transition of power in Guatemala. First is one sentence in the country report, and that sentence, in fact, does not even represent a finding. It merely observes that a separate study done by the OAS found that they characterized the elections as generally free and fair. And apart from that, what the BIA cites to is Mr. Mendez's cross-examination testimony, where, at best, he states that there's always political violence. Political violence is associated with Guatemalan politics. It is not supported by substantial evidence. And apart from that, the other basis on which the BIA relied also constitute legal error. And because it was a holistic determination, Your Honor, I think if this court would find that, for example, the reliance on the leader of parties' dissolution wasn't proper or if the reliance on the peaceful transition of power wasn't proper, if any one of those determinations is found to be invalid, the proper remedy would be to remand to the IJ. Okay, and let me ask you something. I believe you mentioned this in your client's brief also. I believe you're saying the IJ would have needed more expert testimony on the Guatemala condition rather than just rely on what you and I were just discussing. Am I correct? I suppose to a point, Your Honor. This court has been clear that the IJ and the BIA are entitled to rely, at least in part, on the country report evidence to satisfy their rebuttal burden. I think what the court has held in the Dajal case, in the Ordonez case, in the Freguesi case, is that the country report evidence can only satisfy the government's burden if it specifically negates the petitioner's fear and if it documents a fundamental change in the home country. And here that simply didn't happen. Here the country report evidence is that one election, the presidency, the 2015 presidential election, was not successful for the party, the majoritarian party, against which Mr. Mendez was agitating, the UNE. But the evidence really just boils down to that one sentence in that one country report. And the only connective tissue. Do we know what the status quo ante was? In other words, the prior election, do we know whether this election result that is recorded in the country report was a change or was simply a continuation of the status quo? Judge Kata, I believe it was a change in the sense that the former president had been a member of the UNE party. I'm not explicitly certain that that is in the record, but that is my opinion. Well, if we limit it to the record, what do we know if there was any change? I do believe, Your Honor, I do believe that that was a change. I do believe that the incumbent president prior to 2015 had been a member of the UNE party. Having said that, the record also indicates that the UNE remains a political force in Guatemala. Mr. Mendez testified as such. The UNE remains a majoritarian party with the greatest number of seats in the national legislature. Guatemala is a multi-branch democracy like ours, and it maintains power throughout the country. The country report really only reflects that one presidential election, that one change. And was it that presidential election or the run-up to that election where Mr. Mendez experienced political violence? That is correct, yes. It was late 2014 that Mr. Mendez experienced political violence. The election occurred about a year later in 2015. And he's testified that, of course, he suffered election-related violence in that election, and it continues on. It continued on in the 2020 election, too, and there are future subsequent elections in Guatemala. The connection to the DeHaul case here, Your Honors, is important, I think. The error that occurred here is precisely the same one that occurred in the DeHaul case, because there the petitioner was persecuted by the Maoists because he was a member of the opposition party in Nepal. And the government had satisfied its rebuttal burden by showing that the national government brokered a peace deal with the Maoists in 2006. But this court ruled that the change conditions did not occur in a way that affected the specific circumstances of DeHaul, because the on-paper peace deal would not affect, necessarily, the political persecution that Mr. DeHaul would have faced on the ground. Now, the same is true here for the reasons we just discussed. The government says there's more than just the country report on this score, but I think as we explained in our brief, that just isn't so. If you read the record closely, there's no indication from Mr. Mendez, no specific record indication from Mr. Mendez, that he views the UNE as being meaningfully out of power back home in Guatemala. And, in fact, of course they aren't. Your Honor, if I can just return to Judge Montecalvo's points about the leader party, which is really the second basis on which the BIA rested its decision. There's two reasons why reliance on that was legal error. First, whether the formal entity that Mr. Mendez acted through still exists on the ground today, under the same name, really has no relevance to the asylum scheme, to the regulations. The IJ found that Mr. Mendez's political opinion was advocacy against the corrupt party in power, not specifically for this one particular political party's agenda. And the record further supports the view that Mr. Mendez was advocating on behalf of the party that represented that ethnically indigenous minority's views. And in any event- Mr. Roth, is there any evidence that, should he go back to Guatemala, he would continue to be politically active against the UNE party, given the change in circumstances at the national level? Yes, Your Honor. He was asked that in the hearing, and his answer was, yes, I intend to. And critically, should he go back, you know, the asylum laws protect the expression of a political view, and actually the perception of affiliation with a political view, not formal membership in a particular party. And critically, the second reason why reliance on the leader party dissolution was legal error goes to Judge Montecalvo's point that the BIA seemed to assume that it had been peacefully disbanded, when in fact the best evidence suggests that the reason that the party no longer exists is that it was shut down by the government itself. And allowing an autocratic foreign regime in the future to undermine its citizens' asylum claims by simply disbanding the party that the asylum petitioner belongs to creates Catch-22, and it turns the asylum laws on its head. What is the theory there, given the change in national level, who did the canceling then that the UNA party did not succeed at the national level, as far as what the record shows? The best evidence that we've put before the court in our briefs suggests that the cancellation was done by a government tribunal, Judge Gatta. There is admittedly not a rich record developed as to the specific circumstances beyond that point, which is why we submit that it may be appropriate to remand on that issue in particular, to develop the facts further. Why would the party that defeated the UNA party cancel the leader party? There's a question of timing there, Judge, and I'm not sure that the new political party that succeeded in 2015 was responsible for the cancellation, if the timing had worked out. Suffice to say that the UNE was a national political power throughout this entire period, whether or not they had the presidency or not, and the leader party clearly represented an opposition minority agitating party looking out for the interests of an ethnic minority, whether or not the UNE was specifically in power. And finally, Your Honor, the last basis on which the BIA rested its decision was that the petitioner's fear of returning home was no longer valid because he and his family had not been threatened since he left. Now, this court, again, in the DeHaul case, quite clearly stated that when there's no evidence that the petitioner's family members also participated in the same political organizing and activity that the petitioner had, whether or not those family members had also experienced persecution is just not relevant to the analysis, and that just makes common sense, too. And should the court find that that basis alone was constituted legal error, again, because it was a holistic determination that the government satisfied its burden, we think the best remedy here would be a remand. What evidence do you have on the record of future harm? Because that's one of the things your client's alleging. What evidence? I believe it's just his testimony or? Well, certainly, Your Honor, I'll note by noting that the BIA did not actually rest its decision on the concept that he wouldn't, for example, be recognized when he returned. There wasn't that determination. Do you mind if I finish? You can finish answering that question. Go ahead. But apart from that, the best evidence is his statement that he'll return his, you know, in evidence commitment to political organizing and the view that political parties in opposition in Guatemala, specifically that represent ethnic minorities, continue to face political violence. Thank you, Judge. Thank you, Mr. Roth. Thank you, Mr. Roth. At this time, Mr. Stanton, please come on up to the podium. Okay. May it please the Court, John Stanton for the respondent. The First Circuit does not get a lot of immigration cases compared to some of the other circuits in the country, but for whatever reason, I don't know why, this Court seems to get a lot of cases involving potential political persecution following a change of circumstances. This Court has very, very developed jurisprudence in that area. Here, the agency gave four bases, not three, but four bases for finding that circumstances fundamentally changed, thus negating the presumption of a well-founded fear of future persecution. Three of them are in full accordance with this Court's case law. The remaining basis is in full accordance with the vast majority of this Court's case law. With respect to the first basis, the 2015 election, I don't have a record citation off the top of my head, but the 2015 election is similar to Mr. Rose's, that the U.N.E. Party enjoined one-party rule prior to 2015, and they were defeated in an election. So this Court has repeatedly found when there's an election where there's been a change in power, that that can support a finding of changed circumstances. It doesn't need to be completely violence-free. It doesn't need to be that the persecuting party is completely out of power. This Court has a number of cases upholding a finding of changed circumstances when the change has been the result of shared or split government. We cite several of those cases in footnote 9 of our brief from this Court. Admittedly, they all came from Cambodia, but if you would like to see examples of other Court decisions involving split or shared government, changed circumstances involving other countries, I would direct this Court to the Sixth Circuit decision at Mabanga, which is set in our brief, the Sixth Circuit 2021 decision. They cite cases from almost half a dozen other countries where the Court leads the Sixth Circuit upheld a finding of changed circumstances besides Cambodia. Do you have a question? Yes, could I interrupt you for a second to ask this? I'm here for you. So the government needs to rebut the presumption that the IJ found. The government needs to show that the country conditions changed such that Mr. Mendez's fear is negated. Not completely negated, Your Honor. Just like the well-founded fear, yes. It's no longer likely. It doesn't have to be completely negated, but I'm sorry, yes. Here, the evidence the government offered of that is the country conditions report. How is that report particularized to Mr. Mendez's situation and fear? Well, he claims he feared persecution from the U.N.E. party, and prior to, during his persecution, the U.N.E. party enjoyed one-party rule, like they could act with total impunity. The fact that the party is no longer in complete control, no longer one-party power, I mean, would tend to negate. I mean, they know they can't. They have to learn to work with other people. They can't just do whatever they want anymore. So I understand. I think your point, that point is better made where a country has, say, a despot in power, and then the despot's deposed and a free and fair democratic government is elected. And we don't have that evidence. What we have is a pretty basic country conditions report. So I'm asking more specifically, how is that report, because that report forms, I think, the basis of the government's proof, particularized to Mr. Mendez's situation.  The U.N.E. isn't gone, right? The U.N.E. is not gone. I mean, the fact that, like, they still have significant power in what appears to be the Guatemala legislature, I mean, that's the type of split shared government I'm talking about. It wasn't just a country report either. I mean, Petitioner himself testified that the U.N.E. candidate lost the election in 2015. So, I mean, again, to the extent your Honor is saying that, like, the fact that the election itself doesn't necessarily show the requisite regime change, I mean, I understand, but there is more going on here as well. The fact that there was a peaceful transition of power with, I mean, some violence, I mean, but it doesn't have to be completely violence-free. I mean, most regrettably, the United States had some violence two years ago, but didn't fundamentally alter the fact that we had a peaceful transition of power, mostly peaceful. So there was also the fact that the leader party made significant gains in the 2015 election, showing that, again, I mean, these people have to, like, learn to live with each other. They can't just go beating up the opposition or else they may face consequences. What's your basis for saying that? In other words, we can posit one situation where central control of conditions in a country is very strong and it's driven, or we can posit another that is more federal type, where all politics is local. The board's ruling in your argument seemed to ask us to assume that it's the former, that a change in national leadership would change local conditions, and I don't see anything in the record that allows us to draw that inference. What would you point us to? I don't believe there's anything in the record either way, whether the U.N.E. party was completely. He did testify that, like, prior to the 2015 election, the U.N.E. party was in control of his local area. So I don't think there's any testimony either way. So that's a constant that the U.N.E. is still in control of his area, and why wouldn't that, and if it's then silent as to whether that's a sufficient condition for the persecution to continue, notwithstanding a change in the presidency, then doesn't that become the government's problem because of the burden shifting triggered by the finding of past persecution? Well, I mean, there's just no evidence either way what the local conditions were. I can't recall any, but, again, the fact that the U.N.E. lost the power of the executive, I'm assuming that's reasonably comparable to our own system of government, that I would like to think that the Guatemalan executive would control, I mean, like, law enforcement. So, I mean, even assuming that there's some U.N.E. sympathizers still in Petitioner's area, I would like to think that the change in party would allow Petitioner to make a complaint if he's still bothered again, and that complaint would be acted on. So, Kennedy's election then ended persecution of African Americans in Mississippi? Could you repeat that, please? Sure. I'm just making, it seems you're just asking us to assume without evidence that a change in the national level would drive a change in the local level, and I just posit it as an example. You pointed to our own circumstances. I pointed to Kennedy's election in 1960 and conditions in Arkansas and Mississippi. Well, conditions in Mississippi were extremely very difficult. That being said, I mean, if I know my history correctly, I mean, the Kennedy government did indeed send federal agents to Mississippi. I mean, yes, were things still difficult for African Americans in places like Mississippi? Absolutely. But, I mean, the government was making efforts to, like, try to combat the violence in those days. I mean, so, I mean, which would go towards other elements of the asylum claim. I mean, like, whether the government's unwilling or unable to protect. But, again, if I know my history correctly, I mean, federal agents were sent to places like, just to help you? Yes. Isn't this a good case to, or shouldn't we remand based on what Judge Coyote is asking to further develop, because, again, the country condition, it's just very generic in the record, whether it's substantial evidence or not, but shouldn't this be remanded for the IJ to, you know, receive further information and make a more informed decision? Well, I mean, it's not just, again, there were three other bases. Even assuming the court isn't as satisfied with the 2015 election, it's also the fact the leader party no longer existed and the fact that he wasn't bothered by anybody else and the fact that his family wasn't bothered either well. With respect to the leader dissolution, I mean, there's very, very little evidence in the record. I would petitioner to not affirmatively make the argument that the dissolution of the party created political persecution. If we ignore, I accept your argument, say, on the leader party and on the family conditions, right? But we still have this broader problem, don't we, of the burden the government faces and the particularization of the change in the country's circumstances to Mr. Mendez. All right. Okay. I mean, our position is, like, if the change from the- Sorry, can I interrupt you? Because if that is a problem, the finding of the BIA is still a problem for the government, right? Even if we accept your arguments pertaining to the other two issues. Okay. Well, I'm not sure what else this court would like the government to produce. I mean, the election changed. I mean, the UNE is no longer in complete control of the government. I mean, he claims he's afraid of the UNE party. So, I mean, you could revand, but I mean, I'm not sure what other type of- I mean, I suppose the government, DHS, could have produced some sort of expert to discuss how UNE is now behaving itself, for lack of a better word. But, I mean, it's- I don't think petitioners cite a single case where there was election and a change in power, and the court did not uphold the finding of changed conditions. The Hall case, the 2019 case they cite repeatedly, there was an election, but there was no change. It looked like there was an election, and things kept on going the way they were going, and the malice continued to act with relative impunity. So, I mean, this here is a case where there actually has been a change in the form of government, or at least the people in control of government. So, I mean, to the extent this court wants more, and I think if I saw anything in this court's jurisprudence requiring more than just that, well, I mean, along with the peaceful transition and the fact that his own party made gains. I mean, so, I mean, I'm not sure what evidence would satisfy this court. Well, you're correct that we don't have cases where we haven't found a change in relevant government power to be a change in circumstances. The issue here, though, seems to be whether there has been any change in the relevant power, which brings us back to whether this is his abuse was triggered by local officials as opposed to national level officials, keeping in mind that if the record's silent, I think you lose. Well, I mean, if you're going to remand again, like he would probably most, the result would most likely be the same, but there are other elements with respect to his wealth. Those will be addressed on remand, the unwilling and able elements, the fact of whether he could relocate elsewhere, where the UNE party. So, but if the court doesn't think that the change in election is enough, I mean, I'm afraid I don't have much else to say, other than the fact that his party made gains and there was a peaceful transition of power. Again, this court has said in many cases like that was sufficient. I mean, the standard is whether the record points unerringly in. Yeah. So, I mean, it's not a burden to show where it is that the record compel reversal. I mean, I don't think it does. So far, this court's case law is concerned. Well, take if you could go back to the leader party dissolution or cancellation or disappeared. Why would we presume that that is a benign or beneficial development rather than a negative development? Again, I have in mind something like at the end of the 1920s, the Communist Party in Germany was cancelled. I don't think that was a good development for the communists in Germany. Why would we assume that the cancellation of the leader party was not a similar untoward development for those members of the leader party, such as the petitioner? I'll reiterate my exhaustion argument that he simply did not argue, so that's why we don't have the evidence in the record. I don't think he should benefit from his own mistake. I mean, if it means anything, I mean, there are probably reasons why his former counsel didn't make that argument. If Wikipedia is to be believed, the leader party was dissolved in 2016 by a Guatemalan court. Now, who controlled the Guatemalan court? I don't know. They were accused of violating both Guatemalan election and political laws, so that's why. And they were also accused of being a front for drug traffickers. So, I mean, according to Wikipedia, that's not in the record. That's extrajudicial stuff. So, there are probably reasons why his former counsel elected not to pursue that case, but to pursue it in light of argument that carefully. He had to say something. So, in his administrative appeal brief to the board, so he decided to throw out, like, hey, the record's really not clear what happened to the leader party. So, I mean, but, again, that's an exhaustion issue. Like, the fact that he's making it fair to develop the record, that only applies to post-state litigants. If the non-citizen has counsel before the agency, he's expected to develop his own record. We cite one case of that effect in a footnote in our brief. But my time is almost up. I would love to say some things about the family membership, if this court wants to hear it. If not, I'll thank you for your time and sit down. I think we're all set. Thank you very much, Mr. Stanton. Thank you very much. All right. Thank you. Thank you at this time. Attorney Roth, please reintroduce yourself on the record to begin. Thank you, Your Honors. This is Patrick Roth, Robson Gray for the petitioner. I have just two very brief points, if I may, Your Honors, and then, of course, I'm happy to take questions. One is just to emphasize what we just heard. The burden is on the government. The record here is truly sparse with respect to changed country conditions. If the record is silent, if there's no testimony either way, as I believe we heard, then the appropriate remedy here is a reversal and a remand. That is the case here. And second is just on the well-developed jurisprudence that counsel for the government referred to, those cases are clearly distinguishable along the lines that was discussed just now. Largely, those are regime-changed cases. The Waweru case that the board cited involves the Kenyan government a despot leaving and a democratic system taking over. There are cases in Cambodia and Albania where there's been a successful transition to a democratic government. That is not what's going on here. This case is much more like the Dahal case, much more like the Ordonez case. If you're looking for the case that where the country reports do satisfy the criteria, you can see the Palma case, the Palma case in Guatemala where the concern was about guerrillas and the guerrilla groups in the country. The country reports established in detail that the guerrillas had been neutralized, had been made part of the government, they were no longer a concern. It was a particularized finding that addressed and specifically negated the petitioner's credible fear. That's not what happened here. Mr. Roth, what do you, I think we just heard an argument with respect to your leader party argument that the central basis of that was not preserved below. What do you say to that? So, Your Honor, again, I'll go back to, in the brief to the BIA, Mr. Mendez raised the point that the dissolution of the leader party was relevant to his claim. That's at AR-24. At Appendix 127, the government referred to the fact that the leader party was canceled. This point was developed below. It was exposed to the government and to the administrative tribunals. He should not be foreclosed from bringing that argument on appeal because it wasn't sufficiently grappled with by his adversary and by the tribunals below. And additionally, it would be a substantial miscarriage of justice if this court didn't consider, if this court chose to blind itself to the reality of what happened to the leader party. Again, if the record is sparse on that, the appropriate remedy is a remand to the immigration authorities. Thank you, Your Honor. Thank you. Thank you. That concludes argument in this case.